# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| YXS INVESTMENTS, INC. (a Wyoming corporation), PROTECK, LLC (a Delaware limited liability company), and FEFO GROUP, LLC (a Delaware limited liability company), | ) <br> ) Case No. <br> ) <br> ) <br> ) **COMPLAINT** <br> ) |
| Plaintiffs, | ) |
| v. | ) **JURY TRIAL DEMANDED** <br> ) |
| CAPITAL PLUS FINANCIAL, LLC (a Texas limited liability company), CROSSROADS SYSTEMS, INC. D/B/A CROSSROADS IMPACT CORP. (a Delaware corporation), ERIC DONNELLY, an individual, and FARZANA GIGA, an individual. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs YXS Investments, Inc. ("YXS"), Proteck, LLC ("Proteck"), and FEFO Group, LLC ("FEFO") (collectively, "Plaintiffs") bring this action against Defendants Capital Plus Financial, LLC ("Capital Plus"), Crossroads Systems, Inc. d/b/a Crossroads Impact Corp. ("Crossroads"), Eric Donnelly, and Farzana Giga (collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1. Capital Plus owes Plaintiffs at least $5 million and likely more than $25 million pursuant to a Settlement Agreement Capital Plus signed on April 12, 2021 (the "Agreement"). Capital Plus has admitted it owes Plaintiffs $5 million. The Chief Financial Officer of Crossroads and Capital Plus, Farzana Giga, previously admitted to Plaintiffs that Capital Plus was

"withholding" 10% of the amounts it owed to Plaintiffs until the resolution of "any issues that may come about as loans go through the forgiveness and repayment process." Ms. Giga calculated this amount to be $4,935,371.04. Ms. Giga also told Plaintiffs to be patient as it could take up to five years for Capital Plus to pay Plaintiffs. But Ms. Giga promised that Capital Plus would "let [Plaintiffs] know when we are ready to release these funds."

2. Unbeknownst to Plaintiffs, while Ms. Giga and Capital Plus were telling Plaintiffs to wait patiently for funds that Capital Plus admitted it owed, Capital Plus began dissipating assets to its parent corporation Crossroads and its corporate insiders while preparing for litigation. In the months after Capital Plus began withholding amounts owed to Plaintiffs—but before telling Plaintiffs that it was withholding these funds—Capital Plus replaced its CEO with a litigation attorney, "loaned" $335 million to its parent company Crossroads, which Crossroads then used to pay $250 million in bonuses to Capital Plus and Crossroad's executives (like Eric Donnelly and Ms. Giga) and dividends to Crossroad's shareholders (including Mr. Donnelly and Ms. Giga).

3. After successfully dissipating these assets, when again Plaintiffs asked Capital Plus to pay the amounts that Crossroads and Capital Plus's CFO previously admitted they owed, Defendants changed their position. Capital Plus now asserted that it was "shocked" to hear Plaintiffs were asking for the funds Capital Plus previously admitted it owed.

4. Plaintiffs thus bring this action for breach of contract, breach of the covenant of good faith and fair dealing, fraudulent transfer, and money had and received to obtain the amounts Defendants have acknowledged they otherwise owe to Plaintiffs.

## THE PARTIES, JURISDICTION, AND VENUE

5. YXS is a Wyoming corporation with its principal office at 30 N Gould Street, Suite R, Sheridan, Wyoming 82801.

6.  Proteck is a Delaware limited liability company. Its sole member Michael Cota resides in, and is a citizen of, the State of Arizona.

7.  FEFO Group LLC is a Delaware limited liability company. Its sole member James Flores resides in, and is a citizen of, the State of Arizona.

8.  Capital Plus is a Texas limited liability company with its principal office at 2247 Central Drive, Bedford, Texas 76021. Capital Plus is a wholly owned subsidiary of Crossroads, and, upon information and belief, Crossroads is the only member of Capital Plus.

9.  Crossroads is Delaware corporation with its principal office at 2247 Central Drive, Bedford, Texas 76021.

10. Eric Donnelly served as Capital Plus's Chief Executive Officer ("CEO") from 2014 to 2021. Mr. Donnelly also served as Crossroads' CEO from 2017 to the present and served on Crossroads' Board of Directors. Upon information and belief, Eric Donnelly resides in Texas.

11. Farzana Giga served as Capital Plus's Chief Financial Officer ("CFO") from 2014 to the present. Ms. Giga also served as the CFO and Director of Crossroads since 2017 and has served on Crossroads' Board of Directors. Upon information and belief, Ms. Giga resides in Texas.

12. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. This Court has personal jurisdiction over Defendants who are at home in Texas and purposely avail themselves of the privilege of doing business in Texas.

14. Defendants also consented to jurisdiction of federal courts in the State of Texas in the Agreement. [Agreement ¶ 1.16 (consenting to "the sole and exclusive jurisdiction [of] . . . the United States District Court of the District of Texas.").]

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because some or all Defendants reside in this judicial district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and a substantial part of the property subject to the action is situated in this judicial district.

16. Defendants consented to venue of federal courts in the State of Texas in the Agreement. [Agreement ¶ 1.16 ("[T]he Parties hereby consent to venue and jurisdiction in . . . the United States District Court of the District of Texas.").].

## GENERAL ALLEGATIONS

I. **Capital Plus Signs and Benefits from the LSPA and the Agreement.**

17. Capital Plus is a Texas-based community development financial institution ("CDFI"), which engages in the origination, marketing, underwriting, and funding of loans funded and created under the U.S. Small Business Administration ("SBA") 7(a) Loan Program and the Paycheck Protection Program ("PPP").

18. Effective October 23, 2020, Capital Plus entered into the Lender Service Provider Agreement ("LSPA") with financial technology company Fin Cap, Inc. ("Fin Cap"), pursuant to which Fin Cap agreed to provide services to Capital Plus for Capital Plus's PPP loan portfolio. A true and correct copy of the LSPA is attached hereto as Exhibit 1.

19. In Schedule A of the LSPA, Capital Plus agreed to "pay 47% of the total fees received on all PPP loans funded by [Capital Plus] during the time of this agreement to [Fin Cap] within five (5) business days upon receival of fees from the [SBA]." [LSPA Schedule A ¶ 2.]

20. On April 12, 2021, Capital Plus signed and entered into a settlement agreement with YXS, Fin Cap, and several other parties (*i.e.*, the Agreement) to settle a dispute relating to the ownership, operation, and management of Fin Cap.

21. A true and correct copy of the Agreement is attached hereto as Exhibit 2.

22. Capital Plus signed the Agreement and expressly agreed to be bound by specific sections in the Agreement, including Sections 1.2(a), 1.16, 1.20, and 1.22. [Agreement at 1, ¶ 1.]

23. Section 1.2(a) of the Agreement incorporated portions of the LSPA and required Capital Plus to pay 8% of all fees Capital Plus received from the SBA to YXS "in accordance with the terms of the LSPA." [*Id.* at 1–2, § 1.2(a).]

24. On April 13, 2021, YXS requested that the 8% amounts owed to it under the Agreement be paid in two equal amounts to Proteck and FEFO. In April, May, and June of 2021, Capital Plus thus paid amounts owed to YXS under the Agreement to Proteck and FEFO.

25. On information and belief, since the inception of the LSPA, Capital Plus has funded approximately 400,000 PPP loans worth approximately $6.3 billion to small businesses and sole proprietors.

26. On information and belief, Capital Plus has received more than $900 million in fees from the SBA on these PPP loans.

II.  **Capital Plus Withholds Payments in Breach of the Agreement.**

27. Beginning on or about June 18, 2021, Capital Plus began withholding 10% of the amounts that were due and owing to Plaintiffs under the Agreement.

28. Capital Plus did not disclose to Plaintiffs at that time that it was withholding funds due and payable to Plaintiffs.

29. On February 8, 2022, the CFO of Crossroads and Capital Plus, Farzana Giga, advised Plaintiffs that Capital Plus was holding back 10% of fees that were due and owing to Plaintiffs under the Agreement.

30. A true and correct copy of Ms. Giga's February 8, 2022 email is attached hereto as Exhibit 3.

31. Ms. Giga stated Capital Plus was withholding these amounts until the resolution of "any issues that may come about as loans go through the forgiveness and repayment process and any SBA refund issues that we [Capital Plus] has to resolve." [Ex. 3.]

32. Ms. Giga advised that the forgiveness and repayment process "could take up to 5 years given the loan terms are 5 years if not forgiven." [*Id.*]

33. Ms. Giga also told Plaintiffs to be patient because although Capital Plus did not "anticipate the remaining 10% fees to be paid in the near future," she promised that Capital Plus "will let you know when we are ready to release these funds." [*Id.*]

34. Ms. Giga attached to her email a financial reconciliation she had prepared of amounts paid by the SBA to Capital Plus and the resulting amounts owed to Plaintiffs and other parties under the Agreement as of December 31, 2021. [*Id.*]

35. Ms. Giga's reconciliation calculated that Capital Plus owed $4,879,761.04 to Plaintiffs under the Agreement. [*Id.*]

36. By August 31, 2022, Ms. Giga and Capital Plus calculated that Capital Plus owed $4,935,371.04 to Plaintiffs.

37. Upon information and belief, the true amount Capital Plus owes to Plaintiffs is much higher and may exceed $25 million—8% of the more than $900 million in fees that Capital Plus has obtained from the SBA. [Agreement § 1.2(a) (requiring Capital Plus to pay Plaintiffs 8% of total fees Capital Plus received from the SBA).] Plaintiffs, however, need discovery to accurately calculate the actual amount owed.

**III.   After Withholding Amounts Otherwise Owed to Plaintiffs, Capital Plus Begins Dissipating Assets and Preparing for Litigation.**

38. In an attempt to justify the breach of contract, Ms. Giga—the CFO of Capital Plus and Crossroads—promised Plaintiffs that Capital Plus was only withholding the $5 million that

Capital Plus owed Plaintiffs until resolution of issues that may arise during the forgiveness and repayment process.

39. Capital Plus was not permitted to withhold funds until the resolution of issues that may arise during the forgiveness and repayment process. In the LSPA, Capital Plus accepted "ultimate responsibility for all loan decisions, including approvals, underwriting, closings, disbursements, due diligence and loan servicing …, as required by SBA policy." [LSPA at 1, Recital #6 & ¶ 1.]

40. Pursuant to Section 7(g) of the LSPA, Capital Plus expressly disclaimed any representations or warranties regarding "the enforceability of the SBA guarantee" on any loans. [*Id.* at 7, § 7(g).]

41. And Capital Plus accepted responsibility in the LSPA for, and released Fin Cap from, "any disputes related to [Capital Plus's] loan decisions, including approvals, authorizations, underwriting, … loan forgiveness and loan guarantees." [*Id.*, § 7(i).]

42. Instead, as has now become apparent, Capital Plus's stated reason for not paying amounts owed to Plaintiffs under the Agreement was a pretextual excuse to buy Capital Plus time to dissipate assets and become a litigation company.

43. For example, in August 2021, six weeks after Capital Plus began withholding amounts due and owing under the Agreement—but long before disclosing that Capital Plus it was withholding these amounts—Crossroads replaced Capital Plus's CEO with a litigation attorney.

44. Specifically, Eric Donnelly was the longtime CEO of both Crossroads and Capital Plus. But in August 2021, he replaced himself as Capital Plus CEO (staying CEO of Crossroads only). The new Capital Plus CEO was Thiruvendran Vignarajah, a former litigation partner from the law firm DLA Piper.

45. Upon information and belief, Capital Plus also began dissipating assets to its parent company Crossroads as well as to its officers and executives. The month before Mr. Donnelly replaced himself as CEO of Capital Plus, he led Crossroads to make a $238.9 million dividend payment to its shareholders. Approximately $28.5 million of that dividend went to Mr. Donnelly,. Approximately $25M of that dividend went to Farzana Giga, who is the CFO of both Crossroads and Capital Plus.

46. Upon information and belief, Crossroads also paid $18 million in bonus payments to Mr. Donnelly and Ms. Giga in 2021—nearly 30 times their annual salaries of $350,000.

47. Upon information and belief, Crossroads funded these dividend and bonus payments to Mr. Donnelly, Ms. Giga, and others by causing its subsidiary Capital Plus to make a $335 million intercompany "loan" to Crossroads.

48. In other words, while Mr. Donnelly and Ms. Giga were telling Plaintiffs to wait patiently to receive amounts that Capital Plus owed to Plaintiffs, Mr. Donnelly and Ms. Giga transferred $335 million out of Capital Plus to Crossroads to fund over $70 million in bonus and dividend payments to themselves.

49. Defendants have continued to make bonus payments to their executives and officers while withholding money they admit they owe to Plaintiffs. For example, Defendants paid $3 million in management bonuses in 2022 and another $5 million in management bonuses in 2023.

50. This has resulted in the substantial dissipation of Capital Plus's assets. In October 2021—before disclosing to Plaintiffs that Capital Plus was withholding millions of dollars due and owing to Plaintiffs—Capital Plus had over $275 million in cash and cash equivalents according to Crossroad's Consolidated Balance Sheet as of October 31, 2021.

51. By July 31, 2022, however, Crossroads' consolidated balance sheet showed that Crossroads and its subsidiaries (including Capital Plus) had less than $70 million in cash and cash equivalents.

52. Crossroads' cash and cash equivalents then further dwindled to less than $47 million according to Crossroads' Consolidated Financial Statements as of January 31, 2024.

53. Defendants knew or should have known that dissipation of more than $230 million in cash and cash equivalents in two years would leave Capital Plus without sufficient capital to meet its liabilities. Crossroads' own financial statements state that, as of January 31, 2024, Crossroads has over ***$619 million in total liabilities***, such that its liabilities exceed its $47 million in cash and cash equivalents by more than a factor of 10.

### IV. Capital Plus Refuses to Pay Amounts Owed.

54. On May 7, 2024, Plaintiffs demanded that Capital Plus pay the outstanding balance (plus interest) of fees owed by Capital Plus to YXS under the Agreement.

55. Capital Plus refused.

56. Instead, Capital Plus stated that it was "shocked" to hear Plaintiffs were demanding the payment of amounts that Capital Plus's own CFO previously admitted Capital Plus owed.

57. Capital Plus's response exemplifies that Ms. Giga's February 8, 2022 representation—including that Capital Plus would tell Plaintiffs when Capital Plus was "ready to release these funds"—was a stalling tactic to buy time to dissipate assets.

**COUNT I**
**(Breach of Contract)**
**As to Capital Plus**

58. Plaintiffs re-allege and incorporates by reference all allegations set forth above.

59. The Agreement is a valid and binding contract.

60. Pursuant to the terms of the Agreement and the provisions of the LSPA incorporated therein, Capital Plus agreed to pay Plaintiffs 8% of all fees Capital Plus received from the SBA under the LSPA within five (5) business days upon receival of fees from the SBA.

61. In violation of that obligation, Capital Plus failed to pay all fees due and owing to Plaintiffs under the Agreement.

62. Capital Plus's withholding of fees due and owing under the Agreement constitute breaches of that agreement.

63. As a result of Capital Plus's breaches, Plaintiffs have sustained damages in an amount to be proven at trial.

64. Plaintiffs are also entitled to its reasonable attorneys' fees and costs incurred in this action pursuant to Section 1.22 of the Agreement, which provides that the prevailing party in an action to enforce the Agreement "shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding." [*Id.* at 8, § 1.22.]

**COUNT II**
**(Breach of the Covenant of Good Faith and Fair Dealing)**
**As to Capital Plus**

65. Plaintiffs re-allege and incorporate by reference all allegations set forth above.

66. The Agreement contains, and Capital Plus is bound by, a covenant of good faith and fair dealing. [Ex. B, Agreement at 8, § 1.20 ("The Parties expressly covenant to deal with each other in good faith in the performance of this Settlement.").]

67. Capital Plus had a duty of good faith and fair dealing under the Agreement not to act in a manner to deprive Plaintiffs of the benefits of the Agreement.

68. By its conduct described herein, including, but not limited to, failing to pay fees due and owing to Plaintiffs under the Agreement, exercising its supposed "discretion" under the Agreement to decide whether and when to make any payments to Plaintiffs, establishing a 10%

withholding amount not permitted by the Agreement, refusing to timely release the 10% amount withheld under the Agreement, unilaterally and arbitrarily deciding when and under what conditions it would decide to release withheld funds to Plaintiffs, and failing to timely remediate any contractual breaches, Capital Plus has breached its covenant of good faith and fair dealing.

69. As a result of Defendants' breaches, Plaintiffs have sustained damages in an amount to be proven at trial.

70. Plaintiffs are also entitled to their reasonable attorneys' fees and costs incurred in this action pursuant to the terms of the Agreement.

### COUNT III
### (Fraudulent Transfer)
### As to all Defendants

71. Plaintiffs re-allege and incorporate by reference all allegations set forth above.

72. Under Tex. Bus. & Comm. Code § 24.005(a)(1), a transfer made to a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor, or if the debtor received a lack of reasonably equivalent value for transfer and was insolvent or financially vulnerable at time of transaction.

73. Plaintiffs are "creditors" and Capital Plus is a "debtor" because Plaintiffs have a claim against Capital Plus by way of their right to payment pursuant to the Agreement.

74. Plaintiffs' claims against Capital Plus and Crossroads arose before Capital Plus made the $335 million intercompany "loan" to Crossroads, which Crossroads then further dissipated by distributing over $250 million to Mr. Donnelly, Ms. Giga, and other corporate insiders through bonus and dividend payments.

75. Upon information and belief, Capital Plus made the $335 million intercompany "loan" to Crossroads with an intent to hinder, delay, or defraud its creditors, including Plaintiffs.

76. Upon information and belief, Crossroads distributed the over $250 million in bonus and dividend payments to corporate insiders with an intent to hinder, delay, or defraud its creditors, including Plaintiffs.

77. Upon information and belief, Capital Plus and Crossroads did not receive a reasonable equivalent value in exchange for the transfers and were insolvent or financially vulnerable at time of transactions because their liabilities exceeded their assets.

78. The fraudulent transfers have caused injury to Plaintiffs by hindering their ability to collect upon their claim against Defendants.

79. As a result of the fraudulent transfer, Plaintiffs seek to void the $335 million loan and $250 million in dividends and bonuses paid to Mr. Donnelly and Ms. Giga to the extent necessary to satisfy Plaintiff's claim.

80. Plaintiffs also seek attorneys' fees pursuant to Tex. Bus & Com. Code § 24.013 because it has been necessary to engage attorneys to represent them in this proceeding.

### COUNT IV
### (Money Had and Received and Unjust Enrichment)
### As to all Defendants

81. Plaintiffs re-allege and incorporate by reference all allegations set forth above.

82. Plaintiffs and Capital Plus reached an Agreement for Plaintiffs to receive 8% of all fees Capital Plus received from the SBA under the LSPA.

83. Defendants, for their profit, at the expense of Plaintiffs, have withheld, diverted, or taken custody of at least $5 million in funds that in equity and good conscience belong to Plaintiffs.

84. By their own admission, Defendants have been withholding 10% (or more) of all SBA fees due and owing to Plaintiffs.

85. Upon information and belief, Defendants have used the money owed to Plaintiffs to loan the funds out to Defendants' other customers at more than 10% interest.

86. Defendants have also used the money to benefit Crossroads and its executives and officers through intercompany loans and bonuses and dividends paid to officers and executives. The Defendants are retaining those funds instead of remitting the portion owed to Plaintiffs.

87. This wrongful conduct has caused a significant loss to Plaintiffs, and equity requires that these withheld funds be returned to Plaintiffs, with interest, in an amount to be proven at trial.

## ALTER EGO
### As to Crossroads

88. Plaintiffs re-allege and incorporate by reference all allegations set forth above.

89. Crossroads is jointly and severally liable to Plaintiffs on all causes of action against Capital Plus as its alter ego, such that holding only Capital Plus liable would promote injustice.

90. Crossroads controls Capital Plus, which acts for Crossroads' benefit.

91. For most of the time relevant for the allegations and claims in this Complaint, Crossroads and Capital Plus shared the same Chief Executive Officer and Chief Financial Officer, had common Directors on their Board of Directors, operated in the same common offices, and, upon information and belief, shared other employees.

92. Upon information and belief, Crossroads and Capital Plus commingle assets, liabilities, and accounts, transfer funds between businesses, and share common ownership.

93. Upon information and belief, Crossroads and Capital Plus have had such unity between the companies that the separateness of such entities has ceased to exist.

94. Crossroads, through its Chief Financial Officer Ms. Giga, made false representations to Plaintiffs on February 8, 2022, that Capital Plus would release withheld funds

after resolving any "SBA refund issues," despite now claiming that Plaintiffs are not entitled to any additional funds from Capital Plus and that Capital Plus is not holding funds for Plaintiffs.

95. Crossroads knew those representations were false or reckless when made, as evidenced by Capital Plus's dissipation of cash and cash equivalents in the months immediately following that representation and preparation to become a litigation company.

96. Upon information and belief, Crossroads knowingly made these false representations with the intent to buy time to dissipate funds to Crossroads and to its executives and officers through intercompany loans and dividends and bonuses to corporate insiders.

97. Because Crossroads perpetuated fraud—including dishonesty or intent to deceive Plaintiffs—and reaped the financial benefits from SBA fees Capital Plus earned under the Agreement, it would be an injustice to allow Crossroads to escape liability.

98. Crossroads used Capital Plus as its alter ego to perpetrate fraud and injustice against Plaintiffs for Crossroads' direct benefit.

99. Accordingly, Crossroads and Capital Plus are jointly and severally liable to Plaintiffs for all causes of action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Award damages in an amount to be determined at trial and issue judgment in Plaintiffs' favor and against Defendants;

b. Award Plaintiffs all costs and expenses incurred in connection with this action against Defendants, including but not limited to Plaintiffs' attorneys' fees and costs under the Agreement and Tex. Bus & Com. Code § 24.013;

    c.    Void the $335 million intercompany "loan" from Capital Plus to Crossroads and the $250 million in dividends and bonus payments to Mr. Donnelly and Ms. Giga.

    d.    Award Plaintiffs pre- and post-judgment interest at the maximum rate permitted by law; and

    e.    Award Plaintiffs such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY

Plaintiffs respectfully demand a trial by jury of any and all claims and issues so triable.

Date: July 17, 2024

Respectfully submitted,

*/s/ Jonathan R. Mureen*

Jonathan R. Mureen
Texas Bar No. 24060313
SQUIRE PATTON BOGGS (US) LLP
2200 Ross Avenue, Suite 4100W
Dallas, Texas 75201
Telephone: 214-758-1500
Facsimile: 214-758-1550
jon.mureen@squirepb.com

David S. Norris (*pro hac vice* forthcoming)
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
Tel.: 602 528 4013
david.norris@squirepb.com

*Attorneys for Plaintiffs*